## Hoffman *v.* Kline et al., Appellants.

486

Argued March 27, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Thomas M. Benner,* First Assistant City Solicitor, with him *Charles A. Waldschmidt,* City Solicitor, for appellants.—If the amendment can be construed two ways, that construction should be made which gives the amendment the largest possible area in which to operate.

Where great inconvenience will result from a particular construction, or great public interests will be sacrificed, that construction is to be avoided unless the meaning plainly requires such construction: Pettit v. Fretz, 33 Pa. 118; Dryden v. Ry., 208 Pa. 316; Riley v. Pa. Co., 32 Superior Ct. 579; Com. v. Wilkes-Barre, 258 Pa. 130; Oxford Coal Co. v. F. & C. Co., 248 Pa. 311; Lawrence Co. v. Horner, 281 Pa. 336.

Where a plant is continually being extended and improved as the municipality grows and expands, it is being continually constructed, and the word "construction" should be interpreted to embody the idea of continuing construction instead of construction at one time.

*W. W. Stoner,* with him *Charles Schlegel,* for appellee.—Our position is that the amendment is limited in its application to the construction or acquisition by a municipality of an entire water works which would be a complete unit in itself.

No one could have any doubt as to the meaning of the word "construction" when used in the sense that it is used in this amendment. The term "construction," as ordinarily used and as generally understood, means the erection or otherwise creating of a new thing; the word "acquisition," when used as used in the amendment, means purchase, whether by a transaction involving a sale, or by condemnation. The meaning of these words is not in any way affected by the use of the phrase "or the appurtenances thereof." This phrase must be read

"and the appurtenances thereof," that is to say, the word "or" must be understood in its conjunctive sense.

The limitation in time for the determination of the sufficiency of the net revenue in the case of acquisition of a water works to a period of five years either before or after the acquisition thereof, and, in the case of construction, to five years after the completion thereof, show undoubtedly that the provisions of the amendment contemplated that the water works so to be acquired or constructed shall be treated as a unit, from which net earnings over a test period may be ascertained.

OPINION BY MR. JUSTICE FRAZER, May 12, 1930:

On October 9, 1924, the mayor of the City of Pittsburgh approved an ordinance, adopted by the council of that municipality, which authorized and directed an increase of the then existing councilmanic bonded debt,—indebtedness created by vote of council, without the assent of the electors,—in the sum of $1,200,000, by the issue of bonds designated as "Street Improvement Bonds 1924," the money to be used, as set forth in detail in the ordinance, for various street improvements within the limits of the city. Before the bonds were issued, plaintiff, appellee here, filed a taxpayers' bill to restrain the City of Pittsburgh, its mayor and controller, from issuing the obligations in question on the ground that such issue would be, under article IX, section 8, of the Constitution of the Commonwealth, an unlawful increase of the bonded debt beyond the two per centum of the assessed valuation of the city's taxable property, permitted without a vote of the electors. The answer filed by the city and the mayor denied the material allegations in plaintiff's bill and averred the proposed issue was legal under sections 8 and 15 of article IX of the Constitution of this Commonwealth. A separate answer filed by the controller, since deceased, admitted plaintiff's material allegations, and submitted himself to the judgment of the court. Following numerous hear-

ings in which exhaustive statistical exhibits of the city's finances figured, the referee, in an extensive report, sustaining plaintiff's averments, and declaring the ordinance of 1924, authorizing and directing the issue, to be void, recommended that the officials of the municipality be restrained from taking the proposed action. Exceptions to the report were heard and dismissed by the court in banc, and a final decree entered in favor of plaintiff, restraining defendants from proceeding with the proposed increase of indebtedness. From this decree defendants appealed.

Appellants present but one assignment of error, which is directed to the final decree of the court below, and one "question involved" for our consideration, which they have phrased in an unsatisfactorily limited form as follows: "Construction of article IX, section 15, of the Constitution."

As to the single assignment of error, appellants seem to have presented it merely as a matter of form. The final decree of the court below, which forms the substance of the assignment, shows intrinsically and distinctly that the matters set out in the record have been determined in favor of plaintiff; yet no mention whatever is made of that result in the printed argument of counsel for defendants. We may accordingly assume since the final decree in terms dismisses defendants' exceptions to the report of the referee, declares the ordinance of 1924 void and perpetually enjoins the issue of bonds authorized, that appellants, in offering at least no assignment of error to the dismissal of the exceptions are without ground upon which to base their sole specification of error, and cannot consequently show error on the part of the court below. We said in Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449, 452: "The findings of fact and conclusions of law on which the decree is based are the necessary elements to sustain the decree. If the chancellor is mistaken in any of them, the overruling of the exceptions thereto should

be assigned as error. The assignment of the final decree does not permit consideration of all manner of alleged errors in findings, conclusions, admissions of evidence, and the like. Should the final decree only be assigned, the correctness of findings of fact is admitted."

Counsel for appellee stress at some length the fact that no part of the testimony or the exhibits before the referee appear in the record before us. But here, the whole issue was referred for decision to the referee, and it will be presumed that in determining the case he considered all competent testimony and found from the evidence not only all facts necessary to sustain his conclusions of law, but also all facts warranted by the evidence (Valentine v. Conner, 40 N. Y. 248, 257); accordingly, if the record does not contain the evidence, but merely findings of fact, it will be presumed there was no evidence from which other facts could be found: Stoddard v. Whiting, 46 N. Y. 627, 630. However, we need not dwell further on this matter, since, after completely omitting all reference to their single specification of error directed to the final decree of the court below, appellants purposely and insistently limit our consideration of the case to the question, not indeed of the meaning of section 15, but solely to whether the meaning given by the referee and the court below to the single word "construction," as used in section 15, is in accord with the intent and purpose of the Constitution. Inasmuch as the statement of questions involved limits the scope of the appeal (Slemba v. Hamilton & Sons, 290 Pa. 267), we shall limit our discussion here to the single matter appellants insist is the only one involved requiring our determination. For this purpose a brief recital of a few aspects of the case is necessary.

By the admitted findings of the referee, it was established that, at the date of the adoption of the ordinance in 1924 authorizing and directing the issue of the bonds here in question, the city debt due upon obligations issued by authority of council, and without the consent

of the electors at the polls, was $18,767,324.37. At the same date the assessed valuation of the city's taxable property was $951,157,960; and two per centum of that sum, or $19,023,159.20, was the constitutional maximum limit of the city's right to incur new indebtedness, or to increase its indebtedness, without the consent of the voters. There remained consequently at that period a balance of $255,834.83, which constituted the amount to which council by its vote was authorized to increase the debt of the municipality without a taxpayers' vote. Manifestly, under these conditions, council was without authority to swell the debt of the city, except by a vote of the people, by the issue of bonds to the value of $1,-200,000. But, as was found by the referee, there were at the date of the contested ordinance outstanding councilmanic water bonds amounting to $1,481,902.37, which obligations were included in the net councilmanic indebtedness of $19,023,159.20; but it was contended by the city officials that, under the provisions of section 15, article IX, of the Constitution, these water bonds should have been excluded in making the computation of the net councilmanic debt, by which exclusion the borrowing power of council, without the assent of the electors, would have been sufficiently large to legally allow the issue of bonds authorized by the ordinance of 1924. The referee rejected this contention and found the water bonds outstanding should not be included within the language of section 15 of article IX, and hence were a part of the net indebtedness of the municipality. Under this finding affirmed by the court, council was limited in its power to increase the city's indebtedness by its vote alone to the extent of $255,834.83, as stated above.

Section 15 reads as follows:

"No obligations which have been heretofore issued, or which may hereafter be issued, by any county or municipality, other than Philadelphia, to provide for the construction or acquisition of water works, subways, under-

ground railways or street railways, or the appurtenances thereof, shall be considered as a debt of a municipality, within the meaning of section eight of article nine of the Constitution of Pennsylvania or of this amendment if the net revenue from said property for a period of five years, either before or after the acquisition thereof, or, where the same is constructed by the city or municipality, after the completion thereof, shall have been sufficient to pay interest and sinking fund charges during said period upon such obligations, or if the said obligations shall be secured by liens upon the respective properties, and shall impose no municipal liability. Where municipalities or counties shall issue obligations to provide for the construction of property, as herein provided, said municipalities or counties may also issue obligations to provide for the interest and sinking fund charges accruing thereon until said properties shall have been completed and in operation for a period of one year; and said municipalities and counties shall not be required to levy a tax to pay said interest and sinking-fund charges, as required by section ten of article nine of the Constitution of Pennsylvania, until after said properties shall have been operated by said counties or municipalities during said period of one year. Any of the said municipalities or counties may incur indebtedness in excess of seven per centum, and not exceeding ten per centum, of the assessed valuation of the taxable property therein, if said increase of indebtedness shall have been assented to by three-fifths of the electors voting at public election, in such manner as shall be provided by law."

Section 15 is an amendment to the Constitution of the Commonwealth, adopted by a vote of the people in 1913, and by its terms has reference only to an issue of bonds of a particular nature, to be used for a specific purpose; that is, for the purpose of providing funds for the "construction or acquisition," of municipal water works and other designated public utilities; their pecu-

liar characteristic being that when issued they shall not be "considered as a debt of the municipality, within the meaning of section eight of article nine," of the Constitution, the latter section establishing the limit of debt which may be incurred by municipalities.

Inasmuch as we are limited in our discussion by the single "question involved" presented by appellants, to an interpretation of the word "construction," as used in section 15, we shall consider only those parts of the section having reference, directly or indirectly, to that term. Nevertheless, we deem it advisable also to give general consideration to the whole amendment, which carries through its entire provisions the definite intent and purpose of authorizing a specific class of bond issue, which, when issued, shall, under the Constitution, form an exception to its other provisions relative to the creation and limitation of municipal indebtedness, in that the bonds thus issued shall not be a debt of the municipality. The distinguishing factors which constitute this exception are that if the bonds are issued for the construction or acquisition of water works, as in this case, and if, for a period of five years after the construction, or for five years before or after the purchase of such water plant, it shall have been so financially self-sustaining as to provide, during that period of time, ample revenue to pay the interest and sinking fund charges thereon, then the bonds shall not be considered as a municipal debt. Naturally the plain and sound implied alternative is that, if the bonds are not issued for one or both of these specific purposes, but are put out to provide funds for the operation, enlargement and repairs of an existing water plant, they are, under section 8, to be considered a debt and must be included in a computation of the outstanding bonded indebtedness of the municipality.

Appellants however contend that such interpretation of section 15 is wholly outside the meaning and intent of its provisions, inasmuch as the word "construction,"

as used therein, means, as they argue not only the construction, or erection, of a water works, but, in addition and at the same time, its operation, enlargement, repairs, and the like. On the only occasion previous to the present one, in which this particular amendment to the Constitution has reached us for consideration (Long v. Cheltenham Twp. School Dist., 269 Pa. 472), we said, page 475, "Where ordinary words are used in the Constitution, they must be construed in their popular and general sense, as the people who voted for it would understand them." This principle is particularly applicable in the present case. There are no express words or sentences in the entire section which invest the term "construction" with other than its general, popular meaning, such as is ordinarily given to it by the people at large, by architects and by those engaged in building enterprises. The standard dictionaries unite in defining the word "construct" as "to build," "to erect," "to make," in the sense of to create; and the term "construction" they define as the act of constructing or making a completed structure. In re Howett, 10 Pa. 379, 380, where the consideration of mechanic lien law was in question, it is said: "The statute created a lien in favor of mechanics and materialmen, where a building has been erected or constructed. ...... In the common understanding and language of the people, when we speak of the erection or construction of a house or a building, we mean the erection of a new house or building, and not the repairs of an old one." And "the Constitution is to be understood, prima facie at least," as we said in Keller v. Scranton, 200 Pa. 130, 134, "as using words in their general and popular sense, unless they are clearly technical in their nature."

Furthermore, by its express terms, section 15 clearly and in apparently carefully chosen words discloses the meaning intended to be given to the word "construction." It provides that where municipalities shall issue obligations "for the construction of property, as herein

provided," the municipalities may issue obligations to pay the interest and sinking fund charges "accruing thereon until said properties shall have been completed and in operation for a period of one year." Here the word "completed" unquestionably has reference to the expression "construction of property"; it is the natural correlative of those words; and carries the plain intent that the construction of the water works must be completed one year before bonds may be issued to provide for interest and sinking fund charges. The system must also have been "in operation" for that period, a provision distinctly implying a completed construction, since only after completion could the water works be operated.

In their effort to bend the word "construction," as used in section 15, to their own interpretation, appellants argue that the word " 'construction' should be interpreted to embody the idea of continuing construction, instead of construction at one time," for the reason, as they seem to claim, that a water works in a municipality is never completely constructed, because the municipality is ever expanding and the water system never finished. If there is anything sound in that argument, we might as well say a municipality itself, at the date of its charter, is not a municipality, but merely an incipient one, and the provisions of its charter would at no time become decisively operative. We may assume, and there is nothing in the record of the present case to the contrary, that when the water works of Pittsburgh were originally constructed or acquired more than a century ago, the plant constituted a distinct unit, definitely located and complete for operation at the time, and whether or not it was self-sustaining during a period of five years following its construction is not here a material question. It may be presumed that the revenues derived from it for that period were sufficient to pay whatever interest and sinking fund charges may have then accrued. What the referee found definitely is, that

it was not until at least half a century after the construction or acquisition of the original Pittsburgh water works that the first water bonds were issued. In fact, all were issued within the past thirty years, and to provide funds for the extension, operation, improvement and repairs of the existing system. None, as the referee found, were issued for the purpose of acquiring or constructing the original works or for acquiring a new plant.

The decree of the lower court is affirmed at costs of appellants.