George A. Fuller Company, Inc., Appellant, *v.* City of Pittsburgh and Joseph L. Cosetti, Treasurer, Appellees.

Argued May 6, 1974, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John G. Kish,* with him *John Miles Kish* and *Kish & Kish,* for appellant.

*Grace S. Harris,* Special Assistant City Solicitor, with her *Ralph Lynch, Jr.,* City Solicitor, for appellees.

*A. Sieber Hollinger,* with him *Reed, Smith, Shaw & McClay,* for amicus curiae, Construction Industry Advancement Program of Western Pennsylvania Fund.

OPINION BY JUDGE BLATT, October 16, 1974:

In December of 1968, the City of Pittsburgh (City) enacted Ordinance No. 675 imposing a tax upon the privilege of operating or conducting business in the City. The ordinance, which became effective on February 1, 1969, required the tax to be paid annually and

its amount to be determined by the volume of the taxpayer's gross annual receipts. It authorized the City Treasurer to promulgate rules and regulations in connection with administration and enforcement of the tax, and, purportedly pursuant to this authority, the City Treasurer issued such regulations in 1969. Section 312(a) of these regulations provided in part: "In the case of a contract, no deduction may be made with respect to amounts paid to subcontractors and materialmen."

Two years after the enactment of Ordinance No. 675, the City enacted Ordinance No. 594, the purpose of which was to amend and supplement Ordinance No. 675. The City Treasurer then promulgated new regulations, effective January 1, 1971, and Section 314(a) of the new regulations provided in part: "In the case of the general contractor, prime contractor or subcontractor employing lower-tier subcontractors, no deduction may be made with respect to amounts paid to subcontractors and materialmen, unless it can be shown that the subcontractor has paid the Business Privilege Tax to the City of Pittsburgh on the same gross receipts stemming from the same contract."

George A. Fuller Company, Inc., the appellant, was engaged in the business of general contracting in the Pittsburgh area. Most of its undertakings were let out to subcontractors who did the actual construction work for that part of a construction contract assigned to them. In December of 1971 the appellant, who had not yet paid the City's business privilege tax for the years 1969 and 1970, filed amended returns for those years and took subcontracting deductions based on the new 1971 regulations. The appellant also took a deduction for the amount of gross receipts it had received as payments under its contracts with the General State Authority (GSA), which is an agency of the state government. As described by the parties, these contracts were

for "the construction of state and general public facilities." The City Treasurer refused to allow these deductions.

The case was presented to the trial court upon a stipulation of facts submitted by the parties, which included, along with the facts stipulated, a stipulation of the following two questions for the court's consideration:

"A. Whether the regulations amended and revised January 1, 1971, by the Treasurer of the City of Pittsburgh should be applied prospectively from the date of revision or whether they should be applied retroactively to the date of enactment of the original Ordinance.

"B. Whether a general contractor can deduct from its Business Privilege Tax Receipts the amount of payments made to it by a state agency which is exempt from business taxes."

In his opinion filed on January 17, 1973, Judge SIL-VESTRI SILVESTRI of the Allegheny County Court of Common Pleas found it unnecessary to resolve Question A, as framed by the parties. Instead, he found the relevant portion of Section 314(a) of the new 1971 regulations to be "a nullity as not within the authority delegated to the Treasurer and beyond the bounds of the authority of the Ordinance." As to Question B, he held that the receipts from construction work performed for the GSA are includable in gross receipts for purposes of the Ordinance. The appellant filed exceptions, and on May 2, 1973 the court en banc affirmed the prior holding of Judge SILVESTRI and dismissed the exceptions. An appeal to this Court ensued.

The appellant first argues that the lower court erred in failing to restrict its opinion to a resolution of the narrow issues presented to it by the parties in their stipulation of facts. As to the binding effect of stipulations, the general rule is that the parties may stipulate, and be bound by their act as the law of the case,

in all matters affecting them without affecting the jurisdiction and prerogatives of the court. *Foley Brothers, Inc. v. Commonwealth,* 400 Pa. 584, 163 A. 2d 80 (1960). A court's jurisdiction, however, can neither be enlarged nor limited by stipulation of the parties. *DeCarbo v. Elwood City,* 3 Pa. Commonwealth Ct. 569, 284 A. 2d 342 (1971). It would appear, therefore, that a stipulation, such as here involved, which would agree to the validity of a regulation for purposes of the case at hand would improperly attempt to tie the hands of the court. Although the question has apparently not yet been specifically treated in this jurisdiction, it has long been the rule elsewhere, at least in regard to attempted stipulations of *in*validity, that "parties may not stipulate the invalidity of statutes or ordinances, and that courts are required to disregard such stipulations since matters of public interest transcending the rights of the litigants are involved." (Citations omitted.) *West v. Bank of Commerce & Trusts,* 167 F. 2d 664, 666 (4th Cir. 1948). We see no reason, therefore, why the court below should not have been able to invalidate an unauthorized regulation under the circumstances of this case, regardless of any attempted stipulation as to validity on the part of the parties to the litigation, especially where the question clearly fell within the scope of the pleadings.

We must consider, of course, whether or not the City Treasurer did exceed the scope of his authority in promulgating Regulation 314(a) in 1971, as the court below held. He derived whatever authority he had in this respect from two separate sections of the ordinance in question: Section 7(b), which empowered him "to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter pertaining to the administration and enforcement of this ordinance. . . ."; and Section 4(c), which provided that "[w]here a receipt in its entirety cannot be subjected to the tax imposed

by this ordinance by reason of provisions of the Constitution of the United States, or any other provision of law, including the exemptions within this ordinance, the Treasurer shall establish rules and regulations and methods of allocation and evaluation so that only that part of such receipt which is properly attributable and allocable to the doing of business in the City of Pittsburgh shall be taxed hereunder."

It is well established, of course, that "the power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute." *Volunteer Firemen's Relief Association of the City of Reading v. Minehart,* 425 Pa. 82, 89, 227 A. 2d 632, 635-636 (1967); *Commonwealth v. DiMeglio,* 385 Pa. 119, 124, 122 A. 2d 77, 80 (1956). Certainly the same rule must apply when a municipal legislative body, the Pittsburgh City Council in this case, has vested rule making power in an administrative agent, here the City Treasurer.

Section 3 of ordinance No. 675 of 1968, as amended by Ordinance No. 594 of 1970, provides: "Beginning with the tax year 1971 and annually thereafter, every person engaging in any business in the City of Pittsburgh shall pay an annual tax at the rate of six (6) mills on each dollar of volume of the gross annual receipts thereof."

"Gross Receipts" is defined in Section 2(f) as: "Cash, credits, property of any kind or nature, received in or allocable or attributable to the City of Pittsburgh from any business or by reason of any sale made, including resales of goods, wares or merchandise, or services rendered, or commercial or business transaction had within the City of Pittsburgh, without deduction therefrom on account of the cost of property sold, materials used, labor, service, or other cost, interest, or discount

paid, or any other expense." Section 2(f) then goes on to specify five separate exclusions from Gross Receipts. Clearly, the ordinance speaks for itself as to the definition of gross receipts, as well as in regard to the allowable deductions and exclusions. It is equally clear that the power of the City Treasurer to administer and enforce the ordinance under Section 7(b) does not include the power to create a deduction when one is not provided for in the ordinance, and that his power to establish rules and regulations under Section 4(c) can be invoked only when a receipt in its entirety cannot be subjected to the tax because of a constitutional provision or some other provision of law. There is, however, not only no provision in the ordinance to prevent the imposition of a tax on a contractor's entire receipts, but Section 2(f) specifically disallows any deduction for materials, labor, service, or other cost or expense.

The appellant also argues that it should be exempt from tax on the payments it received from the GSA in fulfillment of its contracts for "the construction of state and general public facilities." It argues that it is entitled to this exemption under the Act of May 22, 1933, P. L. 853, Art. II, §204, *as amended*, 72 P.S. §5020-204, which provides in part:

"(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

"(7) All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same . . . ." The appellant claims an exemption merely because it has entered onto state owned land to perform contracts with a state agency. We believe this view to be in error. The statute creates an exemption for the use of public property, not for the taxpayer's mere presence on such property, and not for his mere construction thereon of

facilities which are intended to become public property if satisfactorily completed and paid for under the contract.

In cases where exemptions for certain activities have been allowed, and when such activities were not conducted by a public agency itself, the allowance was made only when the activities have involved the acquisition of some interest in the property itself or at least in the operation of a concession upon the property and the use of that property for a public purpose. In *Moon Township Appeal*, 425 Pa. 578, 229 A. 2d 890 (1967), the operation of a hotel, restaurant and newsstand by concessionaries on county property was found to be exempt. In *In Re Spectrum Arena, Inc.*, 330 F. Supp. 125 (E.D. Pa. 1971), the leasing of a building and site as a public assembly facility for sports, entertainment and conventions was held to be an exempt activity. In *Gulf Oil Corporation v. Middletown Area School District*, 92 Dauph. 123 (1969), cited by the appellant, the leasing of real estate from the Pennsylvania Turnpike Commission for the operation of a restaurant and service station was tax exempt. It is obvious that the appellant in this case has not used public property in the same way as it was used in these other cases. It has merely entered upon public property to construct public facilities, for which it will be paid under the terms of its contracts. It must, therefore, be liable for the payment of a validly levied municipal tax upon its privilege to operate or conduct a business, whether that business has been conducted with the GSA or any other public agency or with some non-public individual or agency.

The Order of the court below, therefore, is affirmed.