Xerox Corporation, Appellant, *v.* City of
Pittsburgh, Appellee.

Argued May 6, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

412

*Harry W. Miller,* with him *C. Leon Sherman* and *Royston, Robb, Leonard, Edgecombe, Miller & Urbanik,* for appellant.

*Grace S. Harris,* Special Assistant City Solicitor, with her *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, October 17, 1974:

This appeal primarily raises the question as to whether or not the appellant, Xerox Corporation (Xerox), must pay the City of Pittsburgh's "Business Privilege Tax" for the years 1971 and 1972 on receipts gained from the leasing of equipment to Pittsburgh customers. Xerox also failed to pay the tax on such revenues for 1969 and 1970, but the imposition of the tax for those years is not being challenged in this appeal.

In December of 1968, the City of Pittsburgh (City) enacted Ordinance No. 675 imposing a tax upon the privilege of operating or conducting business in the City. This ordinance, which became effective on February 1, 1969, required the tax to be paid annually and its amount to be determined by the volume of the taxpayer's gross annual receipts. The term "gross receipts" was defined in Section 2(f) of the ordinance as: "Cash, credits, property of any kind or nature, received in or allocable or attributable to the City of Pittsburgh from

any business or by reason of any sale made, including resales of goods, wares or merchandise taken by a dealer as a trade-in or as part payment for other goods, wares or merchandise, or services rendered, or commercial or business transaction had within the City of Pittsburgh, without deduction therefrom on account of the cost of property sold, materials used, labor, service, or other cost, interest, or discount paid, or any other expense." Section 2(f) then enumerated five specific exclusions from "gross receipts," the fifth of which was: "Receipts or that portion thereof attributable to interstate or foreign commerce or to an office or place of business regularly maintained by the taxpayer, outside the limits of the City of Pittsburgh, and not for the purpose of evading payment of this tax and those receipts which the City is prohibited from taxing by law. Such receipts shall be segregated as set forth in Section 4(c) of this Ordinance." As to the authority of the City Treasurer to promulgate rules and regulations where a receipt in its entirety could not be subjected to the tax, Section 4(c) provided in part: "Where a receipt in its entirety cannot be subjected to the tax imposed by this ordinance by reason of the provisions of the Constitution of the United States, or any other provision of law, including the exemptions within this ordinance, the Treasurer shall establish rules and regulations and methods of allocation and evaluation so that only that part of such receipt which is properly attributable and allocable to the doing of business in the City of Pittsburgh shall be taxed hereunder. The Treasurer may make such allocation with due regard to the nature of the business concerned on the basis of mileage division of the receipt according to the number of jurisdictions in which it may be taxed, the ratio of the value of the property or assets of the taxpayer owned and situated in the City of Pittsburgh to the total property or assets of the taxpayer wherever owned and situated, or

any other method or methods of calculation other than the foregoing, calculated to effect a fair and proper allocation."

Allegedly pursuant to the authority herein granted, the City Treasurer established regulations in 1969, and Section 402(c)(2) of these regulations provided:

"Where the original situs of the property is outside Pittsburgh, the receipts from tangible personal property leased to others are deemed to be:

"Allocable receipts, if the property is delivered to lessees within Pittsburgh;

"Non-allocable and non-taxable receipts, if the property is delivered to lessees outside Pittsburgh, whether within or without the United States.

"The term 'original situs,' as used herein, means the place at which the property is warehoused when not leased to others and to which place the property is returned upon termination of the lease. Where there is no such established place, the term 'original situs' shall mean the principal office of the taxpayer."

In 1970, however, the City enacted Ordinance No. 594, which amended Ordinance No. 675, and, although there was no change in the provisions of the ordinance herein concerned, the Treasurer promulgated new regulations, in which Section 402(c)(2) was amended to read: "Where the original situs of the property is outside Pittsburgh, the receipts from tangible personal property leased to others are deemed to be not taxable." The definition of "original situs" was left virtually unchanged under the revised regulations.

Xerox is engaged in the business of building and leasing computers, copiers and other office machinery. It maintains its principal place of business in Rochester, New York, and is authorized to do business in Pennsylvania. It has a local office in Green Tree, which is in Allegheny County just outside of Pittsburgh, and a separate warehouse for the storage of rental equipment.

The location of the warehouse is not indicated except that it is also outside of Pittsburgh.

Xerox filed Business Privilege Tax returns from 1969 through 1972 but computed and paid its tax for each year only upon gross receipts attributable to the repair and maintenance of its equipment. When the City Treasurer audited the books and records of Xerox on or about October 19, 1972, however, he made additional assessments of taxes for all four years in the sum of $116,923.24, thereby adding liability for lease receipts as well as for repair and maintenance. He also assessed penalty and interest from the due date in accordance with Section 8(b) of the ordinance which provides: "If for any reason the tax is not paid when due in each year, interest at the rate of six percent per annum, and an additional penalty of one-half of one percent of the amount of the unpaid tax for each month or fraction thereof during which the tax remains unpaid, shall be added and collected. Where suit is brought for the recovery of any such tax, the person liable therefor shall, in addition, be liable for the costs of collection and the interest and penalties herein imposed." Xerox asked the Treasurer for a hearing, and on March 20, 1973 a hearing was held. The Treasurer, basing his holding on an opinion of the City Solicitor, issued his decision on April 24, 1973, reaffirming the additional tax liability. Xerox then appealed to the Court of Common Pleas of Allegheny County and, in an opinion filed by Judge SILVESTRI SILVESTRI on July 18, 1973, that court ordered the Xerox appeal dismissed. The lower court also ordered that penalties and interest on the additional tax liability for the years 1969 and 1970 be assessed from the due date thereof but that the penalties and interest on the additional tax liability for the years 1971 and 1972 be assessed from the date of notice of the additional assessment from the City Treasurer to Xerox. Xerox then appealed to this Court,

contending that it owed no additional tax for 1971 and 1972.

Xerox argues that the Treasurer promulgated the regulations for 1971 and 1972 within the scope of the powers delegated to him by the ordinance and that the tax may not be imposed in contradiction to those regulations. The regulations, if effective, would exclude the receipts which Xerox acquired from its leasing operations in Pittsburgh, because the leased property would be warehoused outside Pittsburgh when not being leased. The City, on the other hand, asserts that the purported change in regulations cannot preclude Xerox's duty to pay in accordance with the terms of the ordinance itself.

The primary question, therefore, is one of interpreting the terms of the ordinance. The general rule of construction is that taxing ordinances must be strictly construed, and, if there is any reasonable doubt as to the meaning intended, the doubt must be resolved in favor of the taxpayer and against the taxing authority. *Tax Review Board v. Esso Standard Division,* 424 Pa. 355, 227 A. 2d 657 (1967), *cert. denied,* 389 U.S. 824 (1967). We should also keep in mind the principle that the Legislature, in providing for "exclusions" from taxation rather than "exemptions," intended these exclusions to be strictly construed against the Commonwealth. *Tyger & Karl Complete Water Systems Co., Inc. v. Commonwealth,* 5 Pa. Commonwealth Ct. 154, A. 2d (1972). And, of course, a similar situation would exist as to a municipality and exclusions enacted by its legislative body. "As to a taxpayer attempting to establish his right to an exclusion specified in the statute, the burden of so proving is not as heavy as if he were trying to establish an exempt status." *Tyger & Karl, supra,* 5 Pa. Commonwealth Ct. at 163, A. 2d at . Where, however, an ordinance is plain and unambiguous and conveys a clear meaning,

we need not resort to the rules of statutory construction and the ordinance must be given its plain and obvious meaning. *Manoa Shopping Center, Inc. v. Zoning Hearing Board of Haverford Township,* 11 Pa. Commonwealth Ct. 569, 314 A. 2d 516 (1974).

The receipts acquired by Xerox from its leasing activities fell within the definition of "gross receipts" in Section 2(f) of the ordinance. The Treasurer, therefore, would have been acting in contravention to the clear intent of the ordinance if he had attributed the receipts here concerned to a warehouse outside of Pittsburgh, where Xerox equipment happened to be stored while it was not being leased and was not producing income. Moreover, the circumstances of Xerox's leasing activities in Pittsburgh are such that they cannot possibly come within the exclusion created by Section 2(f)(5) of the ordinance. The leased equipment was never to leave the lessee's office in Pittsburgh during the entire term of the lease. All equipment was installed by Xerox employees and serviced by Xerox employees on the premises of the lessee. Xerox's Standard Lease Agreement provided that the lessee "shall not move any equipment without Xerox's prior written authorization and shall permit Xerox to remove equipment upon termination [of the lease]." In addition, most of the machinery leased by Xerox is heavy and immobile. We must conclude that the new regulations purportedly adopted by the City Treasurer fell within the prohibition noted in *Tyger & Karl, supra*: namely, that regulations promulgated by an administrative agency pursuant to statutory directive are invalid where contrary to the legislative intent expressed in the statutory provision to which the regulation relates. The Treasurer, therefore, was required to be guided by the terms of the ordinance; his own attempted but inconsistent regulations notwithstanding.

418

We have recently had occasion to review the rule-making authority of the City Treasurer under the same ordinance in *George A. Fuller Company, Inc. v. City of Pittsburgh,* 15 Pa. Commonwealth Ct. 403, 327 A. 2d 191 (1974). We cited there the well-established principle that "the power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute." (Citations omitted.) *Fuller, supra,* 15 Pa. Commonwealth Ct. at 408, 327 A. 2d at 194. We applied this rule to the situation which confronted us in that case, and, we must also apply it here, and we must hold, therefore, that the Treasurer could not exclude Xerox's receipts from the province of the tax unless these receipts were clearly attributable to an office or place of business outside of the limits of the City of Pittsburgh. Xerox asserts that "[t]he Treasurer has been impressed with the duty to define whether or not a business is being conducted within the City for tax purposes and he has created such a definition." His duty to do this, however, can be exercised solely in order to effectuate his primary duty to make allocation when the exclusion of Section 2(f)(5) is applicable, and it is not applicable here.

Finally, we come to the question as to whether or not Xerox is subject not only to the tax, but also to penalty and interest as imposed by Section 8(b) of the ordinance. The applicable law was settled in *Brown & Zortman Machinery Company v. Pittsburgh,* 375 Pa. 250, 100 A. 2d 98 (1953). In that case, the taxing authority advised the taxpayer incorrectly as to his classification for purposes of the ordinance in question. The taxpayer was subsequently reclassified and the court held that the prior classification had been erroneous. Despite the error of the taxing authority, however, the court concluded that the taxpayer was still liable for

interest calculated from the due date of the tax. On the other hand, the taxpayer was found not to be liable for penalties because he apparently acted in good faith. We must reach the same results in the case at hand. As in *Brown & Zortman, supra,* the City Treasurer here issued incorrect rulings which would tend to mislead the taxpayer, and, even though Xerox had failed to pay the proper amounts in 1969 and 1970, when its liability was clear, this should not preclude it from asserting that it relied upon the Treasurer's regulations for 1971 and 1972.

The City Treasurer's assessment of the tax originally owed was correct, and the lower court properly dismissed Xerox's appeal as to that amount. As to interest, however, the Treasurer's assessment was proper and the lower court should not have relieved Xerox of any part of its obligation to pay interest. But, as to penalty, both the Treasurer and the lower court erred in finding that Xerox owed any penalty.

The order of the court below, therefore, is amended so as to include interest on the unpaid taxes from their due date and to exclude all penalties and, as so amended, is affirmed.