Willard Leasing, Inc. *v.* City of Pittsburgh, a municipal corporation, and Joseph L. Cosetti, Treasurer.
Auto Rental Company *v.* City of Pittsburgh, a municipal corporation, and Joseph L. Cosetti, Treasurer. City of Pittsburgh and Joseph L. Cosetti, Appellants.

Argued May 7, 1976, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*Grace S. Harris*, Executive Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.*, City Solicitor, for appellants.

*Robert G. Sable*, with him *Lampl & Sable*, for appellees.

OPINION BY JUDGE BLATT, September 16, 1976:

On or about September 21, 1972, the City of Pittsburgh (City) conducted an audit of the books and records of the Auto Rental Company (Auto) and Willard Leasing, Inc. (Willard) which resulted in the issuance of a separate assessment against each company for business privilege taxes (plus interest and penalties).[1] Each company appealed its assessment to the Court of Common Pleas of Allegheny County which, on October 29, 1975, sustained both appeals.[2] The City has now appealed to this Court.

In December 1968, the City enacted Ordinance No. 675, the "Business Privilege Tax" (Tax), which imposed an annual tax upon the privilege of operating a business within the city based upon the gross annual receipts of the taxpayer.[3] Section 2(f)(2) of the

---

[1] The original appeals filed in the court below on behalf of Auto and Willard state that they were assessed taxes for the years 1969 through 1972, inclusive, in the amounts of $25,439.76 (Auto) and $13,220.37 (Willard) and penalties and interest in the amounts of $5,809.47 (Auto) and $2,840.37 (Willard).

[2] The two cases were consolidated for trial and opinion and one appeal, covering both assessments, is here involved.

[3] Section 2(f) of the Ordinance defines "Gross Receipts" as follows:

"Cash, credits, property of any kind or nature, received in allocable or attributable to the City of Pittsburgh from any business or by reason of any sale made, including resales of goods, wares or merchandise taken by a dealer as a trade-in or as part payment for other goods, wares or merchandise, or services rendered or commercial or business transaction had within the City of Pittsburgh,

Ordinance[4] allows a "financial business" certain exclusions from "gross receipts." A "financial business" is defined in Section 2(d) of the Ordinance as "[t]he services and transactions of banks and bankers, trust, credit, and investment companies, where not prohibited by law, holding companies, dealers and brokers in money, credits, commercial paper, bonds, notes, securities and stocks, monetary metals, factors and commission merchants."

The single question[5] presented upon appeal is whether or not either Auto or Willard is a "financial business," as that term is defined by the ordinance, and entitled, therefore, to the enumerated exclusions from the computation of "gross receipts." The lower court found that the testimony presented established that both companies: (1) purchased vehicles upon the request, and to the specifications, of a customer; (2) that the companies would lease these vehicles to their customers; (3) that the leases would be assigned to a financial institution, and the title encumbered there-

without deduction therefrom on account of the cost of property sold, materials used, labor, service, or other cost, interest, or discount paid, or any other expense."

[4] Section 2(f)(2) provides, *inter alia*, that gross receipts shall exclude:

"In the case of a financial business, the cost of securities and other property sold, exchanged, paid at maturity, or redeemed, and moneys or credits received in repayment of advances, credits and loans, but not to exceed the principal amount of such advances, credits and loans, and shall also exclude deposits."

Apparently, the result of these exclusions, when applied to a determination of gross receipts, is to tax the gross income of a "financial business."

[5] The original appeals to the lower court were each directed at the total tax assessment and they did not raise any issues in regard to the method of determination of the tax deficiency or to the imposition of interest and penalties. While we note that the appellee taxpayers did not participate in this appeal, their original appeals to the court below did not preserve any issue other than the one stated.

to; and (4) that, at the termination of the lease, the vehicle would be purchased by. the lessee-customer from the lessor-company or returned to the lessor-company for sale to the public. While the court stated that both companies were engaged in the leasing of motor vehicles, it further concluded that each was a financial business that dealt in commercial paper.

The general rule of law is that where "an ordinance is plain and unambiguous and conveys a clear meaning, we need not resort to the rules of statutory construction and the ordinance must be given its plain and obvious meaning." *Xerox Corp. v. City of Pittsburgh,* 15 Pa. Commonwealth Ct. 411, 416-417, 327 A.2d 206, 209 (1974). We believe that neither Auto nor Willard is a "financial business" within the plain and ordinary meaning of the definition in the above-quoted ordinance. Each is a leasing company[6] which, in conjunction with its leasing operations, deals to some extent with commercial paper (the leases themselves). Neither is a dealer(s) or broker(s) in money, credits, commercial paper, bonds, notes, securities and stocks and monetary metals[7] within the plain meaning of the definition which the ordinance provides.

We, therefore, issue the following

ORDER

AND Now, this 16th day of September, 1976, the order of the Court of Common Pleas of Allegheny County, dated October 29, 1975, is reversed.

---

[6] In their original appeals below, the taxpayers stated that they were "in the business of leasing cars and trucks to the public" (Auto) and "in the business of leasing cars, trucks and equipment to the public" (Willard). See also the definition of "leasing" in *Hertz Corp. v. United States,* 165 F. Supp. 261, 262 (Del. 1958).

[7] A "Dealer" or "Broker" in commercial paper generally would be one who buys and sells commercial paper as a business. See generally *Black's Law Dictionary,* p. 487 and p. 241 (Revised Fourth Edition 1968).