COMMISSIONER OF REVENUE *vs*. MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY & others.[1]

Suffolk. September 16, 1981. — November 17, 1981.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.

*Taxation*, Insurance company excise. *Constitutional Law*, Taxation.

General Laws c. 63, § 22A, which imposes on a domestic insurance com-
pany an excise in an amount equal to one per cent of its total gross in-
vestment income, "as reported in its annual statement . . . filed with
the Commissioner of Insurance," does not constitute an improper dele-
gation of the legislative taxing power to the Commissioner of Insur-
ance. [609-611]

Under G. L. c. 63, § 22A, the excise tax to be paid by domestic insurance
companies is measured by total gross investment income as reported in
the annual statements filed by the companies for insurance regulatory
purposes even though such a measure may include items which are not
gross investment income in the tax sense and exclude items that are
gross investment income in the tax sense. [611-614]

The interest earned on Federal obligations may properly be included in
"gross investment income" for the purposes of the excise tax imposed
on domestic insurance companies by G. L. c. 63, § 22A, because it is a
nondiscriminatory franchise tax. [614-617]

The income derived from urban redevelopment projects pursuant to
G. L. c. 121A may properly be included in "gross investment income"
for the purposes of the excise tax imposed on domestic insurance com-
panies by c. 63, § 22A, since it does not constitute a direct tax upon
that income but rather on the general corporate privilege of doing busi-
ness. [617-618]

Income from separate account business is not part of the "total gross invest-
ment income" of domestic insurance companies for purposes of the ex-
cise tax imposed by G. L. c. 63, § 22A. [618-619]

Although items such as the fair rental value of home office buildings, earn-
ings on assets held in connection with employee and agents' pension
plans, and the amortization of Federal investment tax credits are not
traditional items of income, they may properly be included in "gross

---

[1] The other defendants are New England Mutual Life Insurance Com-
pany and State Mutual Life Assurance Company of America.

investment income" for purposes of the excise tax imposed on domestic insurance companies by G. L. c. 63, § 22A. [619]

APPEAL from a decision by the Appellate Tax Board.

*Stephen S. Ostrach,* Assistant Attorney General, for the plaintiff.

*Robert W. Meserve & Mark A. Michelson (Robert J. McGee & John N. Garner* with them) for the defendants.

ABRAMS, J. The Commissioner of Revenue appeals from a decision of the Appellate Tax Board (board), which granted three domestic insurance companies an abatement on an excise tax imposed by G. L. c. 63, § 22A, inserted by St. 1971, c. 555, § 27.[2]

The three companies are domestic insurance companies within the meaning of § 22A. Each of the companies filed with the Commissioner of Insurance an annual statement of their financial condition pursuant to G. L. c. 175, § 25, and with the Commissioner of Revenue (Commissioner)[3] an excise tax return pursuant to § 22A for the year 1971. The excise tax returns reported a lesser amount of "total gross investment income" than the amount shown on exhibit 3 of the annual statements. The Commissioner notified the companies that he intended to increase their gross investment incomes as reported pursuant to § 22A, and to assess them accordingly.[4] The companies paid the assessed tax

---

[2] General Laws c. 63, § 22A, provides: "Every domestic insurance company coming within the scope of the definition of a domestic company in section one hundred and seventy-five shall annually pay, as part of its excise imposed under this chapter, an amount equal to one per cent of its total gross investment income earned during the preceding calendar year, as reported in its annual statement for said year filed with the commissioner of insurance and as shown in Exhibit 3 of said statement for a life insurance company or in Item 10, Column 8, Part I, of the Underwriting and Investment Exhibit for any other domestic insurance company." This provision is effective until January 1, 1982. St. 1977, c. 816, § 29.

[3] The State Tax Commission was reorganized under the new title of Department of Revenue in 1978. St. 1978, c. 514, § 5.

[4] The increased excise was based upon the inclusion of the following items which were included in the annual statement but not in the excise

and applied to the Commissioner for abatement of their 1971 excise. The Commissioner denied the applications and the companies appealed to the board.

Before the board, the companies challenged the constitutionality of § 22A claiming that, if the board were to read § 22A literally, then the statute would be unconstitutional as an improper delegation of the legislative taxing power. The companies argue and the board agreed that since the Commissioner of Insurance has authority under G. L. c. 175, § 15, to determine the contents of the insurers' annual statement filed pursuant to § 25, and since the annual statement is used to determine the amount of excise tax, § 22A, in effect, gives the Commissioner of Insurance the discretion to determine the tax imposed. The board determined that the companies may have raised a valid constitutional claim. In order to avoid constitutional doubts, the board held that § 22A "does not preclude an inquiry into the nature of the items in issue to determine whether in law and in fact they are includable in the term 'total gross investment income' for excise tax purposes, although required to be reported in any event as bearing on the company's financial condition for regulatory purposes."

The board then independently examined eight categories of income (see note 4, *supra*) and determined that the eight categories were not "gross investment income" for tax purposes.[5] The board entered a decision granting the requested abatements.

1. *The constitutionality of § 22A.* The over-all statutory pattern of § 22A does not involve the delegation of legislative authority. General Laws c. 175, § 25, permits the Commis-

---

tax return: (1) interest on obligations of the United States; (2) income derived from G. L. c. 121A projects; (3) income from separate account business; (4) earnings on assets held in connection with employee and agents' pension plans; (5) the fair rental value of home office buildings; (6) management fees; (7) "ex-dividends" on certain securities; and (8) amortization of Federal investment tax credits.

[5] Both the board and the companies concede that not all of these items are income in the traditional sense.

sioner of Insurance to determine the contents of the insurers' annual statement for the "purpose of eliciting a complete and accurate exhibit of the condition and transactions of the companies." Section 25 also allows the Commissioner of Insurance to adopt "the latest applicable form of annual statement approved by the National Association of Insurance Commissioners." The Commissioner of Insurance uses the information contained in this statement to discharge his "duty to exercise a broad surveillance over the operations of companies with a view to instituting procedures and recommending changes which might prevent or reduce the likelihood of unsuccessful ventures." *Commissioner of Ins.* v. *First Nat'l Bank*, 352 Mass. 74, 79-80 (1967).

The Commissioner of Insurance does not include or exclude items in the annual statement for the purpose of affecting the amount of the excise tax, but rather for the purpose of regulating the companies. His power to affect the amount of tax payable under the formula established by the Legislature is purely incidental to those regulatory powers. The taxing power remains with the Legislature as provided in the State Constitution. Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution.

Although the Commissioner of Insurance may incidentally affect the amount of the tax payable, he may not do so except through acts of independent legal significance. "It may . . . be laid down as a general proposition that where a legislature enacts a specific rule for fixing a rate of taxation, by which rule the rate is mathematically deduced from facts and events occurring within the year and created without reference to the matter of that rate, there is no abdication of the legislative function, but, on the contrary, a direct legislative determination of the rate." *Michigan Cent. R.R.* v. *Powers*, 201 U.S. 245, 297 (1906). Thus, "[t]he fact that [a] deduction allowed to a Federal savings and loan association is determined by a Federal agency decision concerning reserve requirements is not an unconstitutional delegation of legislative powers in violation of . . . the Declaration of Rights of the Constitution of the Commonwealth. . . . In

numerous instances a taxpayer's obligation is affected by the conduct of other persons, but those other persons are not exercising the authority of the Legislature to tax. *Their action may influence the amount of tax payable, but the taxing power has not been delegated to them"* (emphasis supplied). *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n,* 372 Mass. 478, 491 (1977). See *Parker Affiliated Cos.* v. *Department of Revenue,* 382 Mass. 256, 266 (1981) ("the prospective incorporation of Federal tax law does not constitute impermissible delegation of legislative authority").

The companies claim that three *Opinions of the Justices* support the board's conclusion that § 22A creates "constitutional doubts." We do not agree. Those opinions involved pending legislation in which the Justices concluded that the legislative authority to enact substantive measures had been delegated. See, e.g., *Opinion of the Justices,* 334 Mass. 716 (1956) (power to appropriate funds); *Opinion of the Justices,* 328 Mass. 674 (1952) (power to make structural changes in the form of town government); *Opinion of the Justices,* 239 Mass. 606 (1921) (power to establish offense to be punished by fine or imprisonment). See *Corning Glass Works* v. *Ann & Hope, Inc.,* 363 Mass. 409 (1973). In each of these instances the delegation of legislative authority was the major thrust of the pending legislation. We believe that § 22A differs markedly from the legislation under consideration in those *Opinions of the Justices.*

However, the Legislature has "[g]reat latitude of discretion . . . in determining . . . the standard or measure to be adopted as the foundation of the proposed excise [tax]." *Connecticut Mut. Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161, 163 (1882). In adopting exhibit 3, the Legislature determined the standard of measure to be used. Hence, G. L. c. 63, § 22A, is not an improper delegation of the legislative power to tax.

2. *The meaning of "total gross investment income" in § 22A.* In the absence of constitutional doubts our task is to determine what the Legislature intended to subject to the excise tax by use of the words "total gross investment income

earned during the preceding calendar year, as reported in its annual statement." There is nothing in G. L. c. 63, or its legislative history, which is instructive.

The insurance companies assert that the Legislature intended to use gross investment income, in the tax sense, only to the extent that it is required to be reported in the annual statement. Thus, an item would become part of the excise tax measure only if it was both an item of actual gross income, as defined for tax purposes, *and* was required to be reported in the annual statement. Since the board was concerned with the constitutionality of § 22A, it adopted the companies' argument and went on to consider eight separate items of income included by the companies in exhibit 3 but excluded on their excise return (see note 4, *supra*).

Our analysis begins with the underlying premise that the excise tax imposed on the insurance companies by § 22A is an excise tax, not an income tax. The tax measure includes items that are not "income" to the companies in the traditional sense, such as imputed home office rent, amortization of Federal investment tax credits, and earnings on assets held in connection with employee and agents' pension plans; and excludes items which are income in the traditional sense, such as capital gains. The fact that the measure of the tax mentions "gross investment income" as reported in the annual statement does not divest the tax of its excise character. As we said in *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 667 (1979): "The fact that a tax on the exercise of a privilege is adjusted in whole or in part to property values does not deprive the tax of its character as an excise." The tax at issue is imposed on the insurers for the privilege of doing business in the Commonwealth. *State Tax Comm'n* v. *John Hancock Mut. Life Ins. Co.*, 341 Mass. 555, 559 (1960). Black's Law Dictionary 506 (5th ed. 1979). Section 22A does not impose a limited income tax. Rather, it sets out a workable measure, a yardstick to calculate the value of the privilege of doing business in Massachusetts.

The only limitation upon the Legislature's use of its excise taxing power is that the tax be reasonable. *Connecticut*

*Mut. Life Ins. Co.* v. *Commonwealth, supra* at 163. "States are permitted to make fair approximations of the value of . . . privileges in imposing excises upon the corporations which they have created. . . . [We recognize] that in . . . State tax situations, '"rough approximation rather than precision" is sufficient.'" *Springfield Ins. Co.* v. *State Tax Comm'n*, 342 Mass. 505, 513 (1961), quoting from *International Harvester Co.* v. *Evatt*, 329 U.S. 416, 422 (1947). We believe that the Legislature's choice of gross investment income as reported for regulatory purposes as a rough approximation of the value of the privilege of doing business in the Commonwealth is reasonable. That the excise tax measure may include items that are not gross investment income in the tax sense, and exclude items that are gross investment income in the tax sense does not make the Legislature's choice unreasonable.

Additionally, the argument advanced by the insurance companies distorts the language and form used by the Legislature. The insurance companies argue that the statute should be read as creating three independent tests. To become an element of the tax base an item must be (1) an item of gross investment income; (2) earned during the preceding calendar year; and (3) required to be reported in the annual statement. The companies' interpretation is strained. If the Legislature had meant to adopt such a three-part test it could have adopted appropriate language. Indeed, the Legislature could have broken the section into subparts if it meant to convey such a meaning.

Instead of a three-part test, the Legislature chose a unitary concept: "total gross investment income earned during the preceding calendar year, as reported in the annual statement." The "annual statement" contains only items of gross investment income reported for regulatory purposes. By using this language, the Legislature obviously chose this regulatory figure as a rough approximation of the value of the privilege of doing business in Massachusetts. We conclude that the Legislature meant to use the figure of total gross investment income as reported in the annual statement for in-

surance regulatory purposes as a benchmark by which to calculate the amount of excise payable for the privilege of doing business in the Commonwealth.

3. *The items excluded by the board.* We briefly discuss the items of income excluded by the board.

a. *Interest earned on Federal obligations.* One of the items reported to the Commissioner of Insurance on the annual statement, and consequently used in measuring the amount of the excise tax, was interest on obligations of the United States. The insurance companies argue that § 22A cannot constitutionally include the interest earned on Federal obligations in the calculation of the tax base against which the excise is measured since obligations of the United States are exempt from State taxation. The board agreed with the companies.

Both the board and the companies relied on *Northwestern Mut. Life Ins. Co.* v. *Wisconsin,* 275 U.S. 136 (1927). In that case, the Supreme Court of the United States struck down a Wisconsin statute that imposed on insurance companies an annual license fee in the amount of three per cent of "gross income from all sources." *Id.* at 138. The Court held that the fee was fundamentally a tax upon gross income and not a true franchise tax: "Here the statute undertook to impose a charge of 3 per cent. upon every dollar of interest received by the Company from United States bonds. . . . This amounts, we think, to an imposition upon the bonds themselves and goes beyond the power of the State." *Id.* at 141. In its opinion the board pointed to various Supreme Court cases, see, e.g., *Pacific Co.* v. *Johnson,* 285 U.S. 480 (1932), in which a franchise tax measured by a percentage of *net* income was upheld. As a result, the board determined that the Supreme Court has established a distinction between an excise tax based on gross income and one based on net income. The board concluded that the tax imposed by § 22A was a direct tax on gross income and, therefore, was invalid under *Northwestern, supra.*

We think that the fundamental issue in cases concerning the validity of State excise taxes under the supremacy clause

of the Constitution is not whether the measuring base relies upon gross income or net income. Rather, "the issue in the application of state statutes relating to corporations is whether the tax is a franchise tax or a property tax. If the subject of the tax is the corporate franchise, government obligations or the interest thereon may be included in the measure of the tax. But if the subject of the tax is the capital or the property of the corporation, the tax will be deemed an invalid tax on the government obligations." J. Nowak, R. Rotunda & J. Young, Constitutional Law 370 (1978). Compare *Werner Mach. Co.* v. *Director of Div. of Taxation,* 350 U.S. 492 (1956), with *Society for Sav.* v. *Bowers,* 349 U.S. 143 (1955), and *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals,* 338 U.S. 665 (1950). We agree with the Commissioner that § 22A is a tax on the corporate franchise.

Historically, it appears that in the early part of the century the Supreme Court struck down corporate excise taxes that included interest earned on Federal obligations. *Northwestern, supra* at 141 (corporate excise tax measured by "gross income from all sources"). *Macallen Co.* v. *Massachusetts,* 279 U.S. 620 (1929) (corporate excise tax measured by net income). Since the 1930's, however, the Supreme Court has upheld corporate excise taxes which include income immune from direct taxation. In a series of cases the Supreme Court ruled: "[T]he corporate excises may be measured by income immune from a direct tax thereon." Powell, The Waning of Intergovernmental Tax Immunities, 58 Harv. L. Rev. 633, 633 (1945). See *Educational Films Corp.* v. *Ward,* 282 U.S. 379 (1931); *Pacific Co.* v. *Johnson,* 285 U.S. 480 (1932); *New York ex rel. N. Fin. Corp.* v. *Lynch,* 290 U.S. 601 (1933); *Werner Mach. Co.* v. *Director of Div. of Taxation,* 350 U.S. 492 (1956). See also *Home Ins. Co.* v. *New York,* 134 U.S. 594 (1890).

"[A] tax on the corporate franchise . . . is valid despite the inclusion of federal bonds in the determination of net worth. This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income

or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property." *Werner Mach. Co.* v. *Director of Div. of Taxation*, 350 U.S. at 494.[6] In *Home Ins. Co.* v. *New York*, 134 U.S. 594, 599 (1890), the Supreme Court stated: "It is not a tax in terms upon the capital stock of the company, nor upon any bonds of the United States composing a part of that stock. The statute designates it a tax upon the 'corporate franchise or business' of the company, and reference is only made to its capital stock and dividends for the purpose of determining the amount of the tax to be exacted each year."

The rule established by the cases is embodied in 31 U.S.C. § 742 (1976).[7] *Reuben L. Anderson-Cherne, Inc.* v. *Commissioner of Taxation*, 303 Minn. 124, 128, appeal dismissed, 423 U.S. 886 (1975). We conclude that the tax imposed by § 22A is a "nondiscriminatory franchise or other nonproperty

---

[6] The Supreme Court distinguished a case upon which the board relied, *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals*, 338 U.S. 665 (1950), on the basis that the tax was a direct tax on the property of the corporation. The Court stated: "*New Jersey Realty* . . . on which appellant relies, is distinguishable, in that it did not involve a franchise tax, but rather a tax whose legal incidence this Court found to be upon the intangible assets of the corporation." *Werner Mach. Co.* v. *Director of Div. of Taxation*, 350 U.S. 492, 494 (1956). Likewise, in *Society for Sav.* v. *Bowers*, 349 U.S. 143, 146 (1955), upon which the board also relied, the Court held the tax involved therein invalid, stating: "No claim is made that the taxes constituted a franchise tax or some other kind of privilege tax."

[7] Section 742 reads as follows: "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, *except nondiscriminatory franchise or other nonproperty taxes in lieu* thereof imposed on corporations . . ." (emphasis supplied).

The legislative history makes clear that the purpose of the amendment was to clarify existing law: "the bill makes it clear that both the principal and interest on U.S. obligations are exempt from all State taxes except nondiscriminatory franchises, etc., taxes." S. Rep. No. 909, 86th Cong., 1st Sess., reprinted in [1959] U.S. Code Cong. & Ad. News 2769, 2769.

tax," permitted by § 742, see point 2, *supra,* and therefore, the Commissioner is correct in her assertion that the interest earned on Federal obligations may properly be included in the excise tax.

b. *Income derived from c. 121A projects.* Massachusetts Mutual and State Mutual have undertaken urban redevelopment projects pursuant to G. L. c. 121A.[8] The income derived from those projects was required to be reported in exhibit 3 of the annual statement. General Laws c. 121A, § 10, provides that Urban Redevelopment Corporations "shall not be required to pay any tax, excise, or assessment to or for the commonwealth . . . provided, however, that . . . any such corporation shall be required to pay . . . the excises and sums respectively prescribed by this section and section fifteen . . . ." The excise imposed by § 10 is in lieu of local property taxes from which the project is exempt. *Opinion of the Justices,* 341 Mass. 760, 774 (1960).

General Laws c. 121A, § 18 (g), authorizes insurance companies to undertake c. 121A projects and provides: "So much of section ten as applies to the taxation of a corporation organized under section three shall apply to an insurance company only with respect to a particular project or to particular projects, and such company shall remain subject to all other taxation imposed by law with respect to its other activities and property." Since an insurance company pays an excise tax under § 10 for the privilege of undertaking c. 121A projects, the board held that the Legislature could not have intended to include c. 121A income again in the § 22A excise tax measure.[9]

---

[8] General Laws c. 121A, § 2, as appearing in St. 1960, c. 652, § 2, provides in part: "[T]he provisions of this chapter will stimulate the investment of private capital in blighted open, decadent or sub-standard areas, and in the construction, maintenance and operation in such areas of needed decent, safe and sanitary residential, commercial, industrial, institutional, and recreational buildings . . . ."

[9] The board was concerned with potential problems of double taxation. See *DeBlois* v. *Commissioner of Corps. & Taxation,* 276 Mass. 437, 439 (1931). However, § 22A imposes a tax on the corporate franchise and raises no problems of double taxation.

The tax levied by § 22A is an excise imposed for the privilege of doing business in Massachusetts. *State Tax Comm'n v. John Hancock Mut. Life Ins. Co.*, 341 Mass. 555, 559 (1960). In order to roughly approximate the value of that privilege, *Springfield Ins. Co. v. State Tax Comm'n*, 342 Mass. 505, 513 (1961), the Legislature chose to measure the excise by gross investment income as reported for regulatory purposes. Although the figure reflects, to a certain extent, income from c. 121A projects, it does not retain that characteristic for tax purposes. As we said in *Springfield Ins.*, comparing the insurance excise in nature and impact to the excise on savings banks: "'The subject to be taxed was the . . . existing value of the franchises . . . that is, the amount of benefit . . . which the charter . . . conferred on those who held it and enjoyed its privileges. . . . The excise is not laid on the business which each . . . [company] has transacted' during a preceding period, but 'upon the value of the franchise' at the end of the period." *Id.* at 508, quoting from *Commonwealth v. People's Five Cents Sav. Bank*, 5 Allen 428, 437-438 (1862).

Section 22A does not impose an excise on the privilege of undertaking any particular c. 121A project, but rather on the general corporate privilege of doing business. The excise levied by § 22A is imposed solely on the privilege of the carrying on or doing of business by the companies, and not upon the individual items used to calculate that figure. Thus, the tax exempt status of income derived from c. 121A projects does not prevent the Legislature from using it as a part of the base on which the corporate excise tax is levied.

c. *Income from separate account business.* Each of the companies handles "separate account[s]" under G. L. c. 175, §§ 132F-132H. Section 132F provides that an insurer may, by written agreement with the holders of "pension contracts," assign "such contracts and the funds received thereunder, to one or more separate investment accounts, independent of its general investment account, for the purposes of allocating investment returns and asset gains and losses." Each year the insurers file an "Annual Statement"

on Form 1 and an "Annual Statement" for the separate account business on Form 1-S. The Commissioner argues that the words "as reported in its annual statement" in § 22A refer to both forms. We disagree. There is no indication in § 22A that the Legislature intended to refer to anything but the annual statement filed on Form 1. Consequently, the income reported on Form 1-S was properly excluded by the board.

d. *Miscellaneous items.* Items such as the fair rental value of home office buildings, earnings on assets held in connection with employee and agents' pension plans, and the amortization of Federal investment tax credits were all properly reported on exhibit 3 and, consequently, were required to be reported on the excise tax return. To the extent these items are not traditional items of income, it lends support to our conclusion that this is not a limited income tax, but rather a franchise tax.[10]

The decision below is reversed and the case remanded to the board for further consideration of the plaintiffs' applications for abatement consistent with this opinion.

*So ordered.*

[10] Massachusetts Mutual reported management fees on exhibit 3. Although this item could have been reported elsewhere on the annual statement, it was not incorrect to report it on exhibit 3. State Mutual did not follow the instructions of the Commissioner of Insurance as to "ex-dividends."

It is incumbent on the companies to go back to the Commissioner of Insurance if they want to correct their annual statements. Neither company did so.