531 A.2d 294

STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

v.

MARYLAND NATIONAL BANK.

No. 6, Sept. Term, 1987.

Court of Appeals of Maryland.

Oct. 6, 1987.

Hugh G. Stevenson, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kaye B. Bushel, Asst. Atty. Gen., on the brief), Baltimore, for appellant.

T. Scott Basik (Herman B. Rosenthal and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

RODOWSKY, Judge.

This case presents a question of interpretation of congressional statutes which were intended to minimize problems in applying the doctrine of intergovernmental immunity in the taxation context. The problem of intergovernmental immunity at hand arises from Maryland's having included in the measurement of the franchise tax imposed on the appellee, Maryland National Bank (the Bank), interest earned by the Bank on certain bonds issued by an instrumentality of the United States. The problem of interpretation arises because there are different federal statutes on which the adversaries rely to support their respective positions.

Maryland imposes a franchise tax on domestic financial institutions for the privilege of existing as a corporation and on foreign financial institutions for the privilege of transacting business in this state in corporate form. Md.Code (1957, 1980 Repl.Vol., 1986 Cum.Supp.), Art. 81, § 128A(a). The tax is measured by net earnings. § 128A(b). The Bank is a corporation organized and existing under the National Bank Tax Act. For purposes of state taxation it is to "be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." 12 U.S.C. § 548 (1982). The Bank's principal office is in Maryland and the Bank is subject to the franchise tax on financial institutions.

There is no contention in this case that the Maryland tax is other than a true franchise or privilege tax. Nor is there

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and adoption of this opinion.

any contention that the tax applies or is administered in a discriminatory fashion.

For the years 1979 through 1982 the Bank included in its report of net earnings subject to the franchise tax a total of $2,818,727.79 of interest on consolidated bonds of Federal Home Loan Banks (FHLB). It paid the tax under protest and then claimed a refund.

The State Department of Assessments and Taxation (the State) denied the refund and, on the Bank's appeal, the Maryland Tax Court ordered the refund to be made. The Circuit Court for Baltimore City affirmed the order of the Tax Court and we issued the writ of certiorari on our own motion prior to consideration of the State's appeal by the Court of Special Appeals.

The Bank relies principally on § 13, as amended, of the Federal Home Loan Bank Act of July 22, 1932, ch. 522, § 13, 47 Stat. 735, now codified as 12 U.S.C. § 1433. Section 1433 reads as follows:

Any and all notes, debentures, bonds, and other such obligations issued by any bank, and consolidated Federal Home Loan Bank bonds and debentures, shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority. The bank, including its franchise, its capital, reserves, and surplus, its advances, and its income, shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that ... any real property of the bank shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. The notes, debentures, and bonds issued by any bank, with unearned coupons attached, shall be accepted at par by such bank in payment

of or as a credit against the obligation of any home-owner debtor of such bank.[1]

The State submits that, when interpreted in the light of history, § 1433 has no application to a franchise tax and that the controlling statute is 31 U.S.C. § 3124(a) (1982). The latter provides:

Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

(2) an estate or inheritance tax.

The State has analyzed the problem correctly, in our view.

The doctrine of intergovernmental immunity rests on the nature of the federal system created by the United States Constitution. With particular respect to a prohibition against state taxation of the obligations of federal instrumentalities, the doctrine has been recognized since *M'Culloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 4 L.Ed. 579 (1819). In connection with the issuance of treasury notes to finance the Civil War and to prevent their possible taxation by the states, Congress undertook to express the constitutional prohibition in a statute. P. Hartman, *Federal Limitations on State and Local Taxation* § 6:20, at 340 (1981) (Hartman). That enactment essentially became Rev.Stat. § 3701 and, later, 31 U.S.C. § 742 (1952), which read:

Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United

---

1. The language "and consolidated Federal Home Loan Bank bonds and debentures" was added by the Act of May 28, 1935, ch. 150, § 8, 49 Stat. 295. The bonds involved in the instant case are consolidated bonds.

States, shall be exempt from taxation by or under State or municipal or local authority.

In 1865 the Supreme Court struck down the application of a New York property tax to obligations of the United States owned by a bank, saying that "the tax is imposed on the property of the institutions, as contradistinguished from a tax upon their privileges or franchises." *The Bank Tax Case,* 2 Wall. (69 U.S.) 200, 209, 17 L.Ed. 793, 795 (1865). There followed a line of cases in the Supreme Court, decided while the substance of 31 U.S.C. § 742 was in effect, sustaining privilege taxes measured by nontaxable federal securities. The judicial rationale was "that the taxing State has power to impose the tax on a privilege, which it had power to withhold; and which, therefore, the State has the power to tax.... [W]hen the State is imposing a tax on its own creation, it is not interfering with the operations of the Federal Government." Hartman, *supra,* at 348 (footnote omitted).

Writing in 1956 in *Werner Machine Co. v. Director of Div. of Taxation,* 350 U.S. 492, 494, 76 S.Ct. 534, 535, 100 L.Ed. 634, 637, the Supreme Court said in a per curiam opinion that it "has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property." The Court then cited, in chronological order, *Society for Sav. v. Coite,* 6 Wall. (73 U.S.) 594, 18 L.Ed. 897 (1868); *Provident Inst. for Sav. v. Massachusetts,* 6 Wall. (73 U.S.) 611, 18 L.Ed. 907 (1868); *Hamilton Co. v. Massachusetts,* 6 Wall. (73 U.S.) 632, 18 L.Ed. 904 (1868); *Home Ins. Co. v. New York,* 134 U.S. 594, 10 S.Ct. 593, 33 L.Ed. 1025 (1890); *Educational Films Corp. of America v. Ward,* 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931); and *Pacific Co. v. Johnson,* 285 U.S. 480, 52 S.Ct. 424, 76 L.Ed. 893 (1932).

In *Educational Films, supra,* decided in the year before enactment of the Home Loan Bank Act of 1932, the Court stated:

[W]e cannot say that the rule applied by this court for some seventy years, that a nondiscriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property, or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now; or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule. [282 U.S. at 392, 51 S.Ct. at 173.]

Present 31 U.S.C. § 3124(a) was enacted in 1959.[2] The 1959 enactment was a response to an Idaho statute which imposed a tax upon individuals measured by an individual's net income. Idaho took the position that the tax need not exempt interest received on federal obligations. The 1959 amendment plainly did more than make clear that the interest on federal obligations was tax exempt. Idaho relied on the formal distinction between a tax on an individual, measured by his net income, and a tax on the income itself.... To answer this argument, the amendment abolished the formalistic inquiry whether the tax is *on* a distinct interest, and replaced it with the inquiry whether "computation of the tax" requires consideration of federal obligations. [*American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 867, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072, 1082 (1983) (citation omitted).]

The Bank submits that 12 U.S.C. § 1433, which authorizes FHLB bonds, is more specific as to FHLB bonds than 31 U.S.C. § 3124(a), that § 1433 declares an exemption from "all" taxation, and that the omission of franchise taxation from the specifically enumerated exceptions to the grant of exemption demonstrates congressional intent for FHLB bonds to be exempt from state franchise taxes "both as to principal and interest." If we assume that FHLB bonds are "obligations of the United States Government" within the

---

**2.** Pub.L. 86–346, of September 22, 1959, § 105(a), 73 Stat. 622. The statute was previously codified as 31 U.S.C. § 742 (1952).

meaning of 31 U.S.C. § 3124(a) (see discussion, *infra* ), then the Bank's interpretation of 12 U.S.C. § 1433 places it in irreconcilable conflict with 31 U.S.C. § 3124(a) insofar as nondiscriminatory franchise taxes are concerned. The rules of statutory construction applied by the Supreme Court to federal statutes are not significantly different from those which we apply. In *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80, 88 (1981), Justice Powell said for the Court:

> Sole reliance on the "plain language" of § 401(a) would assume the answer to the question at issue. These cases involve two statutes, each of which by its literal terms applies to the facts before us. Restatement of the terms of § 401(a) cannot answer which statute Congress intended to control. Recognizing this, the Secretary invokes the maxim of construction that the more recent of two irreconcilably conflicting statutes governs. 2A C. Sands, Sutherland on Statutes and Statutory Construction § 51.-02 (4th ed. 1973). Without depreciating this general rule, we decline to read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress. Our examination of the legislative history is guided by another maxim: " 'repeals by implication are not favored,' ".... "The intention of the legislature to repeal must be 'clear and manifest.' " ... We must read the statutes to give effect to each if we can do so while preserving their sense and purpose. [Citations omitted.]

In the case before us the two statutes can be read compatably by reading 12 U.S.C. § 1433 in the light of the direct tax-indirect measurement distinction which shone more brightly in 1932, when § 1433 was enacted, than it does today. The Maryland franchise tax does not offend § 1433's command that "all [FHLB] bonds, and other such obligations ... shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by ... any State" because Maryland has not taxed the bonds or the interest on them. Maryland has taxed the privilege of

doing business as a financial institution in corporate form in this state and has measured the tax by net income which constitutionally may, under the principle established by the intergovernmental immunity cases cited above, include interest on federal obligations. Thus, the exemption first created in 1932 for FHLB bonds and interest does not control here because the Maryland franchise tax does not tax interest on the FHLB bonds. Title 31, § 3124(a) later abolished the long-standing legal distinction in the intergovernmental immunity context between direct tax and indirect measurement, but the abolition was accompanied by an express federal consent to using interest on federal obligations to compute a nondiscriminatory franchise tax.

*American Bank & Trust Co. v. Dallas County, supra,* relied upon by the Bank, is not to the contrary. The Court in that case invalidated a Texas tax on bank shares which included tax-exempt United States obligations in its computation. The Texas tax, however, was a property tax imposed directly on the federal obligations held by the Texas taxpayer and consequently violated the immunity defined in 31 U.S.C. § 3124(a).[3]

The Bank emphasizes in its argument that the reconciliation which we have approved above renders part of the first sentence of 12 U.S.C. § 1433 surplusage. The Bank's point

---

**3.** *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983) held that a Tennessee excise tax on banks was invalid because it was discriminatory. The Court did not reach the question whether the Tennessee tax was a "franchise or another nonproperty tax" within the meaning of 31 U.S.C. § 3124(a)(1). 459 U.S. at 396 n. 6, 103 S.Ct. at 695 n. 6.

Recent state court decisions have sustained measuring a true franchise tax by gross income which included the interest on federal obligations. *Commissioner of Revenue v. Massachusetts Mutual Life Ins. Co.,* 384 Mass. 607, 428 N.E.2d 297 (1981); *Reuben L. Anderson-Cherne, Inc. v. Comm'r of Taxation,* 303 Minn. 124, 226 N.W.2d 611, appeal dismissed, 423 U.S. 886, 96 S.Ct. 181, 46 L.Ed.2d 118 (1975); and *Schwinden v. Burlington Northern, Inc.,* 691 P.2d 1351 (Mont. 1984), later proceeding, 730 P.2d 422 (Mont.1986). In these cases the analysis related to 31 U.S.C. § 3124(a) and its predecessor, rather than to the statute authorizing the federal securities, the income of which was included in the tax measurement.

is that an excise tax imposed on the transfer of the assets of a decedent to the decedent's legatees and measured by the value of the assets of the decedent's estate is not a direct tax on the estate assets. *See, e.g., United States v. United States Manufacturers National Bank*, 363 U.S. 194, 198, 80 S.Ct. 1103, 1106, 4 L.Ed.2d 1158, 1162 (1960); *Greiner v. Lewellyn*, 258 U.S. 384, 387, 42 S.Ct. 324, 324, 66 L.Ed. 676, 677 (1922); *Plummer v. Coler*, 178 U.S. 115, 130, 20 S.Ct. 829, 835, 44 L.Ed. 998, 1006 (1900). The Bank correctly notes that, if the exemption for the principal and interest on FHLB bonds applies only to direct taxes, it was unnecessary for Congress parenthetically to except expressly from the exemption "estate, inheritance, and gift taxes[.]" The canon of construction which endeavors to give meaning to each word of a statute and to avoid construing any words as surplusage is not an immutable physical law of the universe, but is simply a guide to statutory construction. In the instant matter we are persuaded that Congress's purpose in enacting § 13 of the Homeowners Loan Act of 1932 is revealed by the seventy years of constitutional adjudication antedating the enactment, and not by an inflexible application of the no surplusage canon.

The Bank further submits that FHLB bonds are not "obligations of the United States Government" within the meaning of 31 U.S.C. § 3124(a) because 12 U.S.C. § 1435 provides in part that "[a]ll obligations of Federal Home Loan Banks shall plainly state that such obligations are not obligations of the United States and are not guaranteed by the United States." [4] This argument does not produce the

---

4. Section 1435 reads in full:

Obligations of the Federal Home Loan Banks issued with the approval of the board under this chapter shall be lawful investments, and may be accepted as security, for all fiduciary, trust, and public funds the investment or deposit of which shall be under the authority or control of the United States or any officer or officers thereof. The Federal reserve banks are authorized to act as depositaries, custodians, and/or fiscal agents for Federal Home Loan Banks in the general performance of their powers under this chapter. All obligations of Federal Home Loan Banks shall plainly state

result sought by the Bank. If the principal and interest of FHLB bonds are totally excluded from § 3124(a), then the exemption conferred by that section would not apply to FHLB bonds, including the extension of the exemption to the use of the federal security's income in computing the tax. The State then could still measure the franchise tax on the Bank's privilege by the income from those obligations, because the constitutional doctrine of intergovernmental immunity, as applied by the Supreme Court, does not prevent measuring a franchise tax by including income on federal obligations.

In any event the meaning of "obligation" in 12 U.S.C. § 1435 does not determine its meaning in 31 U.S.C. § 3124. Consolidated FHLB bonds are the joint and several obligations of all twelve Federal Home Loan Banks. G. Munn, *Encyclopedia of Banking and Finance,* at 333 (8th ed. 1983). Section 1435 alerts investors that the bonds do not carry the full faith and credit of the United States. In 31 U.S.C. § 3124(a) the obligations are those of the United States "Government" and include those of government agencies and instrumentalities.

The foregoing conclusion is supported by the federal income tax treatment of interest on federal obligations. 31 U.S.C. § 3124(b) provides:

The tax status of interest on obligations and dividends, earnings, or other income from evidences of ownership issued by the Government or an agency and the tax treatment of gain and loss from the disposition of those obligations and evidences of ownership is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.). An obligation that the Federal Housing Administration had agreed, under a contract made before March 1, 1941, to issue at a future date, has the tax exemption privileges provided by the authorizing law at the time of the contract. This subsection does not apply to obligations and

that such obligations are not obligations of the United States and are not guaranteed by the United States.

evidences of ownership issued by the District of Columbia, a territory or possession of the United States, or a department, agency, instrumentality, or political subdivision of the District, territory, or possession.

This statute is the Public Debt Act of February 19, 1941, ch. 7, § 4(a), 55 Stat. 9, with amendments which are not here material. Section 4(b) of the Act of February 19, 1941, further provided:

The provisions of this section shall, with respect to such obligations, be considered as amendatory of and supplementory to the respective Acts or parts of Acts authorizing the issuance of such obligations, as amended, and supplemented.[5]

The instrumentalities of the United States which issued obligations carrying tax free interest prior to March 1, 1941, included the Federal Home Loan Banks. *See* P–H, *1987 Federal Income Taxes,* ¶ 8285(5). As a result of the Public Debt Act of 1941, interest upon and gain from the sale or other disposition of FHLB bonds is subject to taxation as provided in the Internal Revenue Code. *See* 1 Moody's, *Bank & Finance Manual,* 2916 (1987). The phrase, "obligations of the United States Government," as used in the Act of September 22, 1959, 31 U.S.C. § 3124(a) is at least as broad as "obligations ... issued by the Government" as used in the Public Debt Act of 1941, 31 U.S.C. § 3124(b). Thus, § 3124(a) obligations include FHLB bonds.

Our analysis and interpretation of 12 U.S.C. § 1433 is shared by the Office of General Counsel of the Federal Home Loan Bank Board. In an opinion of October 29, 1975, the General Counsel had ruled that § 1433 rendered immune from inclusion in taxable income under an Arkansas tax dividends received by a federal savings and loan association on the capital stock it held in the Federal Home Loan Bank of Little Rock. In reliance on that opinion a federal

---

5. Section 4(a) of the Act of February 19, 1941, is no longer codified. It was Title 31, § 742a(b) in the 1940 (1941–1946 Supp.) and in the 1952 editions of the United States Code.

association in Florida took the position that its dividend income on FHLB stock was not taxable by Florida. When the Florida tax collector pointed out that Florida's imposition was a franchise tax measured by net income, the savings and loan association turned to the FHLB Board. In an opinion of January 13, 1976, the General Counsel assumed that the Florida statute was "a valid franchise tax under Florida law" and, on that assumption, concurred in the conclusion of the Florida tax collector. After reviewing the Supreme Court cases which had "enunciated the distinction between a direct tax upon net income and an excise or franchise tax measured by net income," the General Counsel concluded:

> Since the tax immunity of Federal Home Loan Bank stock under § 13 of the Federal Home Loan Bank Act is no greater than that of the securities in *Tradesmens [National Bank of Oklahoma City v. Oklahoma Tax Comm'n*, 309 U.S. 560, 60 S.Ct. 688, 84 L.Ed. 947 (1940)]* (Federal Reserve Bank stock) or *Werner [Machine Co. v. Dir., supra*, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634]* (United States Treasury bonds), in our view there appears to be no legal impediment to inclusion of Federal Home Loan Bank stock dividends in the income of savings and loan associations for the purpose of determining the franchise tax imposed by [the Florida statute].

Also on January 13, 1976, the Office of General Counsel rendered the same opinion to a federally chartered savings and loan association in Michigan because the Michigan "tax in question is more in the nature of a franchise tax for the privilege of doing business in the State than a direct tax on [the association's] income."

These opinions on behalf of the Federal Home Loan Bank Board likely concern the second sentence of § 1433 ("The bank, including its franchise, its capital, reserves, and surplus, its advances, and its income, shall be exempt from all taxation ..."). Inasmuch as the second sentence of § 1433 is interpreted to recognize the judicial history of intergov-

ernmental immunity, the first sentence of § 1433 should be interpreted in the same manner.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT REVERSING THE ORDER OF THE MARYLAND TAX COURT AND REMANDING THIS CASE TO THE MARYLAND TAX COURT FOR THE ENTRY OF AN ORDER DENYING THE APPELLEE'S CLAIM FOR REFUND. COSTS TO BE PAID BY THE APPELLEE.