**ROXBOROUGH MANAYUNK FEDERAL SAVINGS AND LOAN ASSOCIATION,**
Petitioner,

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided Jan. 7, 1997.

E. Morgan Maxwell, III, Philadelphia, for petitioner.

Bart J. DeLuca, Jr., Harrisburg, for respondent.

Before PELLEGRINI and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.

Roxborough Manayunk Federal Savings and Loan Association (Roxborough) petitions for review the order of the Board of Finance and Revenue (Board) upholding the resettlement by the Commonwealth of Pennsylvania, Department of Revenue (Department) of Roxborough's Mutual Thrift Institutions Tax for the year 1987.

Roxborough, a Pennsylvania corporation with its principal place of business in Philadelphia, is subject to the Pennsylvania Mutual Thrift Institutions Tax (MTIT) pursuant to Article XV of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8501—8506.

Roxborough[1] filed its 1987 MTIT report on February 13, 1988. In this report, Roxborough did not include in its MTIT taxable income base the interest income earned from a demand deposit account[2] with the Federal Home Loan Bank of Pittsburgh (FHLB) because it believed such interest income was

---

1. Roxborough has reorganized as a savings bank—Roxborough Manayunk Federal Savings Bank. The reorganization has no effect on this case or the applicability of the MTIT.

2. Demand deposits are funds accepted by a bank which are subject to immediate withdrawal. *In re Protest of First Federal Savings and Loan Association of Claremore,* 743 P.2d 640, 641 n. 1 (Okla.1987), *cert. denied and appeal dismissed,* 485 U.S. 901, 108 S.Ct. 1070, 99 L.Ed.2d 230 (1988).

exempt.[3] In 1987, as it had in prior years, Roxborough deposited a substantial portion of its daily liquid funds in a demand deposit account with the FHLB. Demand deposit accounts with the FHLB, as well as bonds and notes it issues, all bear interest. Roxborough received periodic statements from the FHLB on this account detailing the interest accrued and daily balances.

The Department initially settled Roxborough's 1987 MTIT tax without changes. Then, in 1991, after resettling Roxborough's 1989 MTIT return, the Department initiated a resettlement of the 1987 report, increasing the tax due for that year. The Department resettled the tax by disallowing an exemption for the interest income from the FHLB demand deposit account, taking the position that an FHLB demand deposit account was not required to be exempt as a United States obligation, and adjusted the tax liability accordingly.[4] On Roxborough's appeal, the Board sustained the resettlement initiated by the Department. Roxborough then filed this petition for review which is heard *de novo*.[5] The parties have filed stipulations of fact pursuant to Pa. R.A.P. 1571(f), as summarized above, which we adopt as our own findings.

Roxborough contends that the interest income from its FHLB demand deposit account is tax-exempt interest for purposes of MTIT because it is a "United States obligation". Section 1502 of the Tax Reform Code, 72 P.S. § 8502, establishes the MTIT and its exemptions:

(a) Every institution shall annually ... make a report to the Department of Revenue, setting forth the entire amount of taxable net income received or accrued by said institution from all sources during the preceding year ...

...

(c) Net income or net loss shall be determined in accordance with generally accepted accounting principles, except that:

...

(5) Net income or net loss shall exclude income or loss derived from *obligations of the United States* which, *by Federal law,* are exempt from local and state taxation.... For purposes of this article, United States obligations shall be obligations coming within the scope of 31 U.S.C. § 3124 ... (emphasis added).

Federal law exempts United States obligations from state taxation in Title 31 of the United States Code, which authorizes public debt instruments, stating in 31 U.S.C. § 3124(a) as follows:

*Stocks and obligations of the United States Government* are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax .... (emphasis added).

Additionally, obligations of the FHLB are specifically exempted in the Federal Home Loan Bank Act, at 12 U.S.C. § 1433:

Any and *all notes, debentures, bonds, and other such obligations issued* by any [FHLB], and consolidated Federal Home Loan Bank bonds and debentures, shall be exempt both as to principal and interest from all taxation ... imposed ... by any State, county, municipality, or local taxing authority. (emphasis added).

### A.

■ Roxborough first argues that the Public Debt provision, 31 U.S.C. § 3124, is

---

3. The Federal Home Loan Bank system was created by federal statute, the Federal Home Loan Bank Act, 12 U.S.C. §§ 1421—1449.

4. Prior to the settlement of the 1989 MTIT return, Roxborough was unaware of any position of the Department that interest on FHLB demand deposit accounts should be included in the taxable income base for the MTIT. In general, the only guidance given by the Department is its Corporation Tax Bulletin No. 94, which lists what the Department considers "United States obligations" and which includes "Federal Home Loan Bank Notes and Consolidation Bonds".

5. Although this court hears petitions for review from decisions of the Board of Finance and Revenue in our appellate jurisdiction, we function essentially as a trial court. *PICPA Foundation For Education and Research v. Commonwealth,* 143 Pa.Cmwlth. 291, 598 A.2d 1078, 1080 n. 6 (1991), *affirmed,* 535 Pa. 67, 634 A.2d 187 (1993); Pennsylvania Rules of Appellate Procedure 1571.

the applicable exemption rather than the exemption set forth in the Federal Home Loan Bank Act, 12 U.S.C. § 1433. Although Roxborough argues that the demand deposit accounts are exempt under either statute, it believes the broader language of 31 U.S.C. § 3124 is applicable because it is specifically referred to in the Pennsylvania statute, Section 1502 of the Tax Reform Code. The significance in the application of one federal statute rather than the other is that term "obligations" in 31 U.S.C. § 3124 is not encumbered by the restrictive phrase "other such obligations issued", which would be applied under the principle of *ejusdem generis.*[6]

Although the parties approach this as a choice between a general and specific statute, we believe the provisions are harmonious. Section 1502 of the Pennsylvania Tax Reform Code makes "obligations" as used in 31 U.S.C. § 3124 tax exempt. The term "obligations" in 31 U.S.C. § 3124 for the purpose of exempting instruments of an FHLB is further defined by 12 U.S.C. § 1433. In order for an instrument of an FHLB to be an "obligation" of the United States under 31 U.S.C. § 3124, it must also be within the subset of "obligations" as defined in the Federal Home Loan Bank Act, 12 U.S.C. § 1433. To be exempt, the demand deposit accounts must be "obligations" within the language of

12 U.S.C. § 1433 as well as 31 U.S.C. § 3124.[7]

### B.

■ The exemption in 31 U.S.C. § 3124 has been interpreted to apply "only to written interest-bearing obligations issued pursuant to congressional authorization." *Smith v. Davis,* 323 U.S. 111, 116, 65 S.Ct. 157, 160, 89 L.Ed. 107 (1944).[8] What is an obligation of the United States government is determined by a test established by the Supreme Court in *Smith:*

> Such instrumentalities in each instance [must be] characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the [full] faith and credit of the United States in support of the promise to pay.

*Id.* at 115, 65 S.Ct. at 159.[9] The parties agree that the demand deposit accounts meet the second prong of the test, that is, they bear interest, but the other prongs are in dispute.

### 1. Written Document

■ Roxborough argues that the accounts are supported by written documents—an ac-

---

**6.** "Ejusdem generis" means of the same kind, class or nature. Black's Law Dictionary 517 (6th ed. 1990). The principle of ejusdem generis in statutory construction is where general words follow the enumeration of a particular class of things, the general words must be construed as applying only to items in the same general class as those things enumerated. *Id.; City of Philadelphia v. Pennsylvania Public Utility Commission,* 676 A.2d 1298, 1308 n. 17 (Pa.Cmwlth. 1996).

**7.** Roxborough argues, however, that other states have held that the general language of 31 U.S.C. § 3124 alone applies to FHLB instruments, citing *State Department of Assessments and Taxation v. Maryland National Bank,* 310 Md. 664, 531 A.2d 294 (1987), *appeal dismissed,* 486 U.S. 1048, 108 S.Ct. 2812, 100 L.Ed.2d 913 (1988), and *National Bank of Alaska v. State, Department of Revenue,* 769 P.2d 990 (Alaska 1989). Both of those cases are distinguishable because they addressed non-property or franchise taxes. Because 31 U.S.C. § 3124 states that the exemption for U.S. obligations applies to all taxes *except* franchise taxes or other non-property taxes in lieu of franchise taxes, the application of the

term "obligations" was unnecessary in those cases, and they are inapplicable in determining whether 31 U.S.C. § 3124 alone applies to determine whether the demand deposit accounts are "obligations".

**8.** Interpreting the former statute, Section 3701 of the Revised Statutes, 31 U.S.C. § 742, which is substantially the same as the present statute. *American Bank & Trust Company v. Dallas County,* 463 U.S. 855, 859 n. 1, 103 S.Ct. 3369, 3373 n. 1, 77 L.Ed.2d 1072 (1983).

**9.** Although the Court in *Smith* set forth this test under the doctrine of constitutional intergovernmental immunity established in *McCulloch v. State of Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), the federal statute exempting United States obligations is "principally a restatement of the constitution rule", *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 397, 103 S.Ct. 692, 695, 74 L.Ed.2d 562 (1983), and the test is equally applicable to determine the applicability of the statutory exemption. *See First National Bank v. Bartow County Board of Tax Assessors,* 470 U.S. 583, 593, 105 S.Ct. 1516, 1522, 84 L.Ed.2d 535 (1985).

count agreement and monthly statements. No account agreement is part of the record in this case, and we can draw no conclusions based on what such an alleged document would provide. However, even assuming Roxborough's assertion of what such an agreement contains is true and based on an examination of the monthly statement that is in the record, we do not believe they are the type of written documents required by the *Smith* test.

The account agreement states the rules by which the account is handled by the FHLB and how interest is paid. The monthly statement is a summary of transactions and interest paid, and reports on the balance in the accounts on a specific day. Neither of these documents can be presented for payment because the account agreement does not provide any specifics as to balances, and the monthly statement references balances held in the past, which are subject to and most likely have changed significantly prior to any demand. Essentially, there is nothing about an account agreement or a monthly statement affirming a present obligation by the FHLB.

### 2. Specified Sums at Specified Date

The *Smith* test requires that there be a binding promise to pay a specified sum at a specified date. In *Rockford Life Insurance Co. v. Illinois Department of Revenue*, 482 U.S. 182, 190, 107 S.Ct. 2312, 2316–17, 96 L.Ed.2d 152 (1987), addressing whether financial instruments commonly known as "Ginnie Maes" were exempt, the Supreme Court held that because these instruments are issued by private financial institutions with only a secondary guarantee by the Government National Mortgage Association, there is no fixed and certain promise by the United States to make any payment. The Supreme Court stated that the absence of this element is critical in light of the purpose of the exemption not to burden the government's ability to finance its functions, and that an uncertain guarantee is too attenuated to affect its ability to borrow money.

The nature of demand deposit accounts is that the sum and date of "payment" by the FHLB is unknown. The depositor can immediately withdraw any and all funds deposited without any limitation as to how long those funds have been deposited and without notice. A demand is made on the daily balance or any part thereof, including the interest thereon, so that the actual amount can only be known at the time of the demand. Like a guarantee then, the payment on a demand deposit account is neither fixed nor certain. Also, demand deposit accounts are not authorized under the borrowing power of the FHLB, 12 U.S.C. § 1431(a) and (d),[10] and therefore, as in *Rockford*, payments made on these accounts are too attenuated to affect the FHLB's ability to borrow funds.[11]

### 3. Congressional Authorization with Faith and Credit of U.S.

Demand deposit accounts are specifically authorized by Congress within the Federal Home Loan Bank Act, 12 U.S.C. § 1431(e), which states that each Bank is authorized to accept deposits from members. However, in 12 U.S.C. § 1435,[12] Congress stated that any FHLB obligations are not backed by the full faith and credit of the United States. *See Maryland National Bank*, 310 Md. at 673, 531 A.2d at 299. In *United States v. Anza-*

---

**10.** The Federal Home Loan Bank Act states that notes, debentures, and bonds are issued under the Bank's borrowing power, 12 U.S.C. § 1431(a), but the authorization of demand deposit accounts does not refer to the Bank's borrowing power as the basis for accepting such deposits, 12 U.S.C. § 1431(d), and implies that these accounts are considered conveniences for members rather than necessary for the FHLB to finance its home loans.

**11.** It has also been held that to be considered an "obligation" of the United States, an instrument must contain an express promise, that is, it must contain language sufficiently clear to indicate liability for payment on the instrument. *Bankers Farm Mortgage Company v. United States*, 107 Ct.Cl. 540, 69 F.Supp. 197, 202 (1947), *cert. denied*, 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1846 (1947). Where, as here, there are no written documents supporting the instrument, there can be no express promise to pay.

**12.** 12 U.S.C. § 1435 states in pertinent part:

All obligations of the Federal Home Loan Banks shall plainly state that such obligations are not obligations of the United States and are not guaranteed by the United States.

*lone,* 626 F.2d 239, 243–44 (2nd Cir.1980), the Second Circuit held that District of Columbia Armory Board bonds are not obligations of the United States because there was no pledge of the United States' credit to back the bonds.[13] Likewise, for FHLB accounts, the legislature expressly withheld the full faith and credit of the United States. Therefore, demand deposit accounts do not meet the test for "obligations" set forth in *Smith.*

### C.

 Even if they could somehow meet this test, demand deposit accounts would not be exempt obligations within the meaning of 12 U.S.C. § 1433 because they are not sufficiently similar to notes, debentures and bonds. Under the rule of *ejusdem generis,* the words "other such obligations", in 12 U.S.C. § 1433, refers only to obligations of the same type as those listed—notes, debentures and bonds. *See Smith,* 323 U.S. at 117, 65 S.Ct. at 160–61. Unlike notes, debentures and bonds, demand deposit accounts have no term, interest is paid on the daily balance, with the interest rate varying daily, and checks can be written on the account. Contrary to Roxborough's argument that these accounts effectively have a one-day term that is renewed automatically, in practice, there is no "term" because the depositor can make numerous transactions in a one-day period, that is, the deposits are unaccessible to the depositor only during the hours the bank is closed.

Reaching a similar holding is the Oklahoma Supreme Court's decision in *In re Protest of First Federal Savings and Loan Association of Claremore,* 743 P.2d at 645–46, addressing whether exempting demand deposit accounts would fulfill the purpose of the exemption. The Oklahoma Supreme Court explained, as follows:

> The word "obligations" [in 12 U.S.C. § 1433] could be interpreted to embrace virtually everything which a bank is bound to pay. We must determine how broadly the "obligations" are to be construed and precisely what income is covered by the

exemption. In discerning the scope of the word "obligations," we must bear in mind that the settled rule of construction is that tax exemptions are not to be applied unless they are already granted by the statute.

> Apparently by using the term "issued", the obligations referred to in the statute are those which might be issued in the exercise of the borrowing power of the United States. The United States Supreme Court's decision in *Hibernia Savings & Loan Society v. San Francisco,* 200 U.S. 310, 315, 26 S.Ct. 265, 267, 50 L.Ed. 495 (1906), is helpful. In question there was the validity of a tax imposed by the State of California on checks or orders signed by the Treasurer of the United States. . . .

> In *Hibernia,* the Court noted that the basis of this exemption was that a tax upon the obligations of the United States virtually taxes the credit of the Government; that it impairs its power to raise money for the purpose of carrying on its civil and military operations; and that a tax which diminishes, in the slightest degree, the value of the obligations issued by the Government for that purpose impairs *pro tanto* their market value. However, the Court held that although the checks could be considered to be obligations of the United States within the letter of the exemption statute, they were not within its spirit. . . .

> "Obligations" as used in an exemption clause when construed with the general purposes of the exemption may not necessarily be all-embracing. The fact that in Hibernia the money was deposited in a federal bank and interest was paid to the protestants did not prevent it from becoming a part of the general property of the bank and subject to state taxation. We find that overnight/demand deposits are subject to taxation by the State of Oklahoma. (Footnotes omitted).

Accordingly, demand deposit accounts are not "obligations" of the United States that are exempted from taxation by the Commonwealth by the federal statutes.

---

**13.** Although the Court of Appeals was interpreting the term "obligations" in a federal criminal statute, it stated that because the criminal statute was derived from the federal tax exemption, the principles set forth in *Smith* were applicable.

#### D.

 Finally, even if the demand deposit accounts are not "obligations", Roxborough contends that it had the right to rely on the Department's Corporation Tax Bulletin No. 94, which indicates, it argues, that the Department considers the FHLB demand deposit accounts exempt. Roxborough's reliance on Bulletin No. 94 for an exemption is misplaced because the express language of the Bulletin is that only notes and consolidated bonds of the FHLB are considered United States obligations. (Exhibit C to the Stipulation of Facts). Moreover, Roxborough was not entitled to rely on the Bulletin as conclusive because such lists are not intended to be exhaustive. *H.J. Heinz Company v. Commonwealth,* 678 A.2d 860, 864 n. 7 (Pa. Cmwlth.1996). Nor can a bulletin, any more so than a regulation promulgated by an agency, validly contradict the statute to which it relates. *See Xerox Corporation v. City of Pittsburgh,* 15 Pa.Cmwlth. 411, 327 A.2d 206 (1974); *George A. Fuller Co. v. City of Pittsburgh,* 15 Pa.Cmwlth. 403, 327 A.2d 191 (1974). Finally, the Bulletin indicates on the face of it that it is not conclusive by stating that it is subject to change, and by informing taxpayers that they may seek a ruling which disagrees with the Bulletin by preparing adequate support for their position and sending it to the Department's Office of Chief Counsel.[14]

Accordingly, the interest earned by Roxborough on its demand deposit accounts with the FHLB is not exempt from taxation under the MTIT, Section 1502 of the Tax Reform Code, and we affirm the order of the Board.

#### ORDER

AND NOW, this *7th* day of *January,* 1997, the order of the Board of Finance and Revenue, dated January 22, 1992, Docket No. 91–3237, is affirmed.

Unless exceptions are filed hereto within thirty (30) days, in accord with the provisions of Pa. R.A.P. 1571(i), judgment shall be entered as set forth by the Board of Finance and Revenue on praecipe of either party.

---

**14.** Roxborough also contends that the Department's change in position resulted in unequal treatment of similarly situated taxpayers in violation of the Uniformity Clause, Article VIII, Section 1 of the Pennsylvania Constitution. Roxborough simply asserts that if any MTIT taxpayers excluded the interest from demand deposit accounts of the FHLB without resettlement of the tax by the Department, then those taxpayers were treated more favorably. The mere assertion that some unknown bank *may* have been treated differently is insufficient for Roxborough to meet its heavy burden of proving an unconstitutional application of the tax statute. *See Fideli-* *ty Bank, N.A. v. Commonwealth, Department of Revenue,* 165 Pa.Cmwlth. 524, 645 A.2d 452 (1994) (party asserting constitutional violation has heavy burden of proof). This is particularly true where, as here, the parties admit numerous other institutions have appealed this same issue to this court. Moreover, the Commonwealth is permitted to change its position on the applicability of taxes even without a change in the taxing statute. *See Commonwealth v. Western Maryland Railroad Co.,* 377 Pa. 312, 321, 105 A.2d 336, 341 (1954), *cert. denied,* 348 U.S. 857, 75 S.Ct. 82, 99 L.Ed. 675 (1954).